## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

**Michael Neudecker,**

      Plaintiff,

v.

**Shakopee Police Department,**
**Quality Lifestyles, Inc. d/b/a**
**Friendship Manor Health Care Center,**
**Scott County Department of Human**
**Services,**
**Laurie McMillen,**
**City of Shakopee,**
**Scott County,**

      Defendants.

**Civil No. 07-3506 (PJS/JJG)**

**REPORT**
**AND**
**RECOMMENDATION**

---

JEANNE J. GRAHAM, United States Magistrate Judge

      This matter came to the undersigned on January 8, 2008 on various defendants' motions to dismiss, or in the alternative, for summary judgment (Doc. Nos. 32, 39). Plaintiff Michael Neudecker appeared pro se. Jeffrey A. Egge, Esq., appeared for defendants City of Shakopee and the Shakopee Police Department. Jacqueline J. Chubb, Esq., appeared for defendant Quality Lifestyles, Inc. James R.Andreen, Esq., appeared for defendants Scott County, Laurie McMillen, and the Scott County Department of Human Services. The motion was referred to this Court for a report and recommendation in accordance with 28 U.S.C. § 636 and Local Rule 72.1(b).

## I.     BACKGROUND

      To briefly review, this matter originally came before the undersigned in November 2007 on a motion to dismiss by defendant Quality Lifestyles. By a report on November 27, 2007, this Court recommended that the motion be granted, and this recommendation awaits final ruling by

the district judge.  The other five defendants now bring their own dispositive motions.  Although the same events are at issue, some more detailed discussion of these events is required here.

Neudecker's elderly parents, James and Gertrude[1], reside in Friendship Manor Health Care Center (Friendship), a nursing home operated by defendant Quality Lifestyles.  According to the staff at Friendship, Neudecker visited and made several telephone calls to his parents on August 2, 2005.  (Exh. 1.)[2]  Neudecker and his parents have a strained relationship, including numerous contacts with police.  (Exh. 2.)

A day or two afterwards, Gertrude received a letter from Neudecker.  He states in part, "I want my cemetery plot money mailed to me . . . or I will . . . sledgehammer, hacksaw and sunder your medical bed."  Neudecker then describes, in graphic detail, threats to vandalize his parents' property, including a plan meant to frighten his mother.  (Exh. 3.)  Gertrude brought the letter to Bruce Salmela, an administrator at Friendship.  (Exh. 4 at 1.)

Salmela sent a copy of the letter to Laurie MacMillen, a child protection worker at Scott County Human Services.  Though she decided that the letter did not violate state laws regarding the protection of vulnerable adults, she was sufficiently concerned that she contacted Detective Angela Trutnau of the Shakopee Police Department.  (Exh. 5.)

After further investigation, Trutnau mailed Neudecker a citation for disorderly conduct.  (*See* Exh. 6.)  Neudecker pleaded not guilty to this charge.  The record lacks a complete record of the ensuing proceedings, but in December 2006, the case was dismissed because of "witness issues."  (Exh. 7.)

---

[1] To avoid confusion, Neudecker's parents shall either be referred to by first name or relationship.
[2] Exhibits are cited in an appendix at the end of this report and recommendation.

Neudecker commenced this action by a complaint filed on July 24, 2007, asserting claims under 42 U.S.C. §1983 and the common law tort of malicious prosecution. The complaint names six defendants: Quality Lifestyles; the City of Shakopee and the Shakopee Police Department (the City defendants); and Scott County, Scott County Human Services, and Laurie MacMillen (the County defendants). Nuedecker moved to amend his complaint and filed a proposed amended complaint on October 31, 2007. This motion is addressed in the November 27, 2007 Report and Recommendation (Doc. No. 47).

The City defendants and the County defendants here bring separate motions to dismiss. In accordance with Local Rule 7.1(a)(2), Neudecker was required to file responsive memoranda to these motions on or before December 19, 2007, but he did not do so. On December 26, 2007, he filed a notice of appeal to the Eighth Circuit, challenging this Court's November 27 Report and Recommendation. The same day, Neudecker moved for additional time to respond to the pending motions to dismiss.

Through an order on December 28, 2007 (Doc. No. 59), Judge Patrick J. Schiltz denied the motion for additional time. Neudecker did not file opposing papers, but he argued against the defendants' motions at the January 8, 2008 motion hearing. The Eighth Circuit has since dismissed Neudecker's appeal of the November 27 Report and Recommendation. It is before Judge Schiltz for final review. The remaining defendants' dispositive motions are now ripe for decision.

## II.    DISCUSSION

### A.    Standard of Review

Both the City and the County defendants move to dismiss for failure to state a claim, or in the alternative, for summary judgment. Under the standard for a motion to dismiss for failure to

state a claim, only the complaint is considered.  *See Quinn v. Ocwen Federal Bank FSB*, 470 F.3d 1240, 1244 (8th Cir. 2006).  But the defendants have submitted other documents, and as they have acknowledged, a court has discretion to convert the motion from one to dismiss into one for summary judgment.  *See Casazza v. Kiser*, 313 F.3d 414, 417-18 (8th Cir. 2002).

When exercising this discretion, a court looks at whether the nonmoving party has an adequate opportunity to respond and make a record against summary judgment.  *Gibb v. Scott*, 958 F.2d 814, 816 (8th Cir. 1992).  Here, the defendants clearly represent in their respective papers that they are moving for summary judgment as at least one ground for dismissal.  In addition, they cite Rule 56 of the Rules of Civil Procedure, submit material outside the pleadings for consideration and discuss summary judgment throughout their memoranda.  Accordingly, this Court concludes that Neudecker has had ample notice the defendants are seeking summary judgment and had ample opportunity to respond.  It is appropriate, therefore, to treat the defendants' motion as one for summary judgment.

A party is entitled to summary judgment when the record shows no issue of material fact and the moving party is legally entitled to judgment as a matter of law.  *Menz v. New Holland North America, Inc.*, 507 F.3d 1107, 1110 (8th Cir. 2007).  When examining whether there is an issue of material fact, all reasonable inferences are taken in favor of the nonmoving party.  *Deal v. Consumer Programs, Inc.*, 470 F.3d 1225, 1229 (8th Cir. 2006).  An issue of material fact is present where there is sufficient evidence for a jury to reasonably find for the nonmoving party.  *Bass v. SBC Communications, Inc.*, 418 F.3d 870, 873 (8th Cir. 2005).

B.       **Malicious Prosecution**

For reasons that will become evident, it is simpler to address the common law tort first.[3] Both the City and County defendants correctly observe that under Minnesota law, if a malicious prosecution claim is founded on a criminal proceeding, it is a complete defense to show that the prosecution was supported by probable cause.  *Occhino v. United States*, 686 F.2d 1302, 1311 (8th Cir. 1982).  Such cause exists if a cautious person would reasonably believe the defendant committed the offense that was charged. *Allen v. Osco Drug, Inc.*, 265 N.W.2d 639, 643 (Minn. 1978).

Neudecker was charged with disorderly conduct under Minn. Stat. § 609.72, subd. 1(3). It provides that it is a crime for a person to engage in "offensive, obscene, abusive, boisterous, or noisy conduct or in offensive, obscene, or abusive language tending reasonably to arouse alarm, anger or resentment in others."  When a person makes a threatening statement to others, there is probable cause for this offense.  *See Lundeen v. Renteria*, 224 N.W.2d 132, 148-49 (Minn. 1974) (concluding, under an ordinance substantially like the current statute, a bomb threat was enough to establish probable cause for disorderly conduct).

Here, Neudecker's Disorderly Conduct charge was dismissed by the prosecutor before there was a ruling on probable cause or a trial on the merits.  However the result of the prosecution is inconsequential in this case.  The probable cause determination in a malicious prosecution claim should be based upon the decision to charge, not the result of the case, unless

---

[3]  This Court briefly notes, at the outset, that two defendants are arguing they are not amenable to suit.  There is sound support for the proposition that, because the Shakopee Police Department and Scott County Human Services are departments of municipalities, they cannot be liable and the municipality itself is liable instead.  *See Galob v. Sanborn*, 160 N.W.2d 262, 265-66 (Minn. 1968); *Hyatt v. Anoka Police Dep't*, 700 N.W.2d 502, 506 (Minn. App. 2005); *De la Garza v. Kandiyohi County Jail*, 18 Fed.Appx. 436, 437 (8th Cir. 2001).  Because both Scott County and the City of Shakopee are defendants as well, however, the distinction between the municipalities and their departments is not particularly significant here.

the specific issue of probable cause is adjudicated.  *See Chapman v. Dodd*, 10 Minn. 350

(Minn. 1865) (Where judge rules on the merits of probable cause, the ruling becomes prima facie

evidence of want of probable cause in an ensuing malicious prosecution claim); *Williams v.

Pullman Co.*, 151 N.W. 895 (Minn. 1915) (Proof of later acquittal is not prima facie evidence of

want of probable cause in claim of malicious prosecution); *Dunham v. Roer,* 708 NW2d 552,

570-571(Minn. App. 2006) (although charge resolved favorably for petitioner, the issue is

whether there was probable cause for the prosecutor to charge defendant).

There are persuasive authorities in other states as well.  For example, at least two high

courts directly hold that a dismissal is simply immaterial to a determination of probable cause.

*Patterson v. City of Phoenix*, 436 P.2d 613, 619 (Ariz. 1968); *Harper v. St. Joseph Lead Co.*,

233 S.W.2d 835, 840 (Mo. 1950).  Two others state a more nuanced rule.  Where a prosecution is

not dismissed on the merits, but is dismissed at the request of a prosecutor, then the dismissal is

not evidence of probable cause.  *Palmer Ford, Inc. v. Wood*, 471 A.2d 297, 304-05 (Md. 1984);

*Steadman v. Topham*, 338 P.2d 820, 824 (Wyo. 1959).  This Court finds that the above cases are

consistent with guidance given in the Minnesota cases, and thus should be applied here.[4]

In this case, there was never a ruling on probable cause or on the overall merits of the

charge.  Accordingly, there is no prima facie evidence of a lack of probable cause.  Instead, the

key is to look at the August 5 letter itself.  The question for the Court is whether a cautious

person would reasonably come to the conclusion that defendant committed the elements of

disorderly conduct.  In the letter, Neudecker threatens violence and vandalism towards an elderly

---

[4]  Two other courts take what is an acknowledged minority position, that dismissal for whatever
reason is prima facie evidence of a lack of probable cause.  *See Chatman v. Pizitz, Inc.*,
429 So.2d 969, 971-72 (Ala. 1983); *Peasley v. Puget Sound Tug & Barge Co.*, 125 P.2d 681, 688
(Wash. 1942).  However, this course is not recommended given the vast array of reasons a case
may be dismissed, unrelated to probable cause.

person.  His statements in the letter are certainly enough to supply a reasonable belief that he engaged in abusive conduct likely to arouse alarm in others.  Summary judgment is appropriately granted, therefore, on his claim for malicious prosecution.[5]

### C.      Unconstitutional Prosecution Claims Under § 1983

#### 1.      Vicarious Liability of Municipalities

As both the City and County defendants correctly note, a municipality cannot be liable under § 1983 where its employee does not commit a constitutional violation.  *Sanders v. City of Minneapolis*, 474 F.3d 523, 527 (8th Cir. 2007).  But even if its employee commits a violation, there is no vicarious liability:  a municipality cannot be liable simply because of the relationship between it and its employee.  There instead must be proof that the municipality had a policy or custom that caused the violation to occur.  *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006); *Rogers v. City of Little Rock*, 152 F.3d 790, 800 (8th Cir. 1998).

The record lacks any indication whatsoever that the City or the County defendants maintained a policy or custom to violate constitutional rights as alleged here.  As a result, it is appropriate to grant Scott County and the City of Shakopee summary judgment on the § 1983 claim.

#### 2.      Probable Cause

In his original complaint, Neudecker asserted a claim for retaliatory prosecution under § 1983.  In his proposed amended complaint, he adds a claim for malicious prosecution under the same statute.  Both the City and the County defendants contend these theories of unconstitutional

---

[5]  Because probable cause provides a complete defense against the malicious prosecution claims, this Court will not reach the County defendants' argument that these claims are barred by official immunity.

prosecution are essentially the same, and that no such claims are permitted where the prosecution is supported by probable cause.

Although the proposed amended complaint is not operative, in an abundance of caution, this Court will briefly address the malicious prosecution claim as a separate civil rights violation. The Eighth Circuit, in *Sanders v. Sears, Roebuck & Co.*, held that this theory was not actionable under § 1983 without some injury beyond that under the common law tort. 984 F.3d 972, 977 (8th Cir. 1993). The court then added, in dicta, that even if such a theory were available, the existence of probable cause still provides a complete defense. *Id.* at 977 n. 6.

The theory of retaliatory prosecution, by comparison, derives from the First Amendment. To make out this claim, a plaintiff must show that because of exercising free speech, the plaintiff was singled out for prosecution. *Osborne v. Grussing*, 477 F.3d 1002, 1006 (8th Cir. 2007). But it is a complete defense to show that the underlying prosecution is supported by probable cause. *Hartman v. Moore*, 547 U.S. 250, 265-66 (2006); *Williams v. City of Carl Junction*, 480 F.3d 871, 874-75 (8th Cir. 2007).

The standard for probable cause, in the context of a prosecution claim under § 1983, is not substantively different from the standard as applied for common law torts. *See Pace v. City of Des Moines*, 201 F.3d 1050, 1055 (8th Cir. 2000). As noted beforehand, the August 5 letter supplied probable cause that Neudecker committed disorderly conduct. This reasoning is equally applicable here, and so it is appropriate to grant summary judgment against the § 1983 claims in their entirety.

### 3.    Protected Speech

Notwithstanding this result, this Court thinks it prudent to devote additional discussion to the issue of protected speech. As noted earlier, one element of a retaliatory prosecution claim is

that the plaintiff engaged in protected speech.  The City and County defendants also argue in part that, because the First Amendment does not protect Neudecker's speech, he cannot assert a claim for retaliatory prosecution.

The First Amendment does not protect threats of violence.[6]  *United States v. McDermott*, 29 F.3d 404, 407 (8th Cir. 1994).  To decide whether a person makes a "true threat" that lacks protection, a court considers whether a reasonable person, in the place of the recipient, would interpret the speech as a serious expression of intent to cause present or future harm.  For this inquiry, relevant factors include (1) the reaction of the recipient; (2) whether the threat was accompanied by conditions; (3) whether the threat was directly made to the recipient; (4) whether the sender had a history of making threats against the recipient; and (5) whether the recipient believed that the sender had a propensity for violence.  *Doe v. Pulaski County Special Sch. Dist.*, 306 F.3d 616, 622 (8th Cir. 2002) (en banc).

The record shows that after Neudecker's parents received the August 5 letter, his mother was concerned enough to bring the letter to the attention of staff at Friendship.  The letter included a condition:  if his father did not send money, Neudecker would destroy his bed.  The letter also spelled out details of his plan to vandalize his parents' property, including threats to soil his mother's bed with HIV/AIDS.  Moreover, Neudecker had threatened his parents before.

Even with inferences in Neudecker's favor, the only reasonable conclusion is that the August 5 letter was a true threat.  While a social worker decided the situation did not violate laws protecting vulnerable adults, the reality is that he threatened elderly persons living in a nursing home and used graphic images to frighten those people, be they his parents or not.  *Cf. Doe*,

---

[6]  The County defendants also invoke the "fighting words" doctrine, which exempts speech from the First Amendment where it incites others to violence or lawless action.  *See Buffkins v. City of Omaha*, 922 F.2d 465, 472 (8th Cir. 1990).  Because there is no indication Neudecker incited others, this doctrine need not be examined here.

306 F.3d at 625 (holding that where a letter threatened sexual assault and murder, and other circumstances showed the sender was dangerous, the letter was a true threat).  For this reason, the First Amendment does not protect the speech in the letter, meaning it cannot form the basis for a retaliatory prosecution claim.  This reasoning also supports summary judgment.[7]

## III.   CONCLUSION

From the August 5 letter, there was probable cause to prosecute Neudecker for disorderly conduct.  Because this prosecution was supported by probable cause, it cannot support his claims for the tort of malicious prosecution, or for unconstitutional prosecution under § 1983.  Because the speech in the letter was a true threat, moreover, it is not protected by the First Amendment and cannot form the basis for a retaliatory prosecution claim under § 1983.  This Court concludes that summary judgment should be granted for the City and County defendants and, consistent with November 27 report, that this matter be dismissed in its entirety and judgment entered.

## IV.   RECOMMENDATION

Being duly advised of all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT:**

1.   The County defendants' motion to dismiss, or in the alternative, for summary judgment (Doc. No. 32) be **GRANTED.**

2.   The City defendants' motion to dismiss, or in the alternative, for summary judgment (Doc. No. 39) be **GRANTED.**

3.   All claims against the City and the County defendants be **DISMISSED WITH PREJUDICE.**

---

[7]   Because this analysis indicates that Neudecker has not established any constitutional violations, there is no need to address the defendants' arguments that they are entitled to qualified immunity under § 1983.  *See Brockinton v. City of Sherwood*, 503 F.3d 667, 672 (8th Cir. 2007).

      4.      This litigation be dismissed in its entirety and judgment entered.

Dated this 25th day of March, 2008.

s/ *Jeanne J. Graham*
_____
JEANNE J. GRAHAM
United States Magistrate Judge

## NOTICE

      Pursuant to Local Rule 72.2(b), any party may object to this report and recommendation by filing and serving specific, written objections by **April 8, 2008**.  A party may respond to the objections within ten days after service thereof.  Any objections or responses filed under this rule shall not exceed 3,500 words.  The district court judge shall make a de novo determination of those portions to which objection is made.  Failure to comply with this procedure shall forfeit review in the United States Court of Appeals for the Eighth Circuit.  Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve objections made to this report and recommendation, the party making the objections shall timely order and cause to be filed within ten days a complete transcript of the hearing.

Exh. 1      Aff. of B. Salmela, Nov. 20, 2007, Exh. 1 (Memo. of L. Berndt, Aug. 4, 2005) [Doc. No. 43].

Exh. 2      Aff. of John Buetow, July 5, 2005 (Memo. of J. Egge) [Doc. 42]

Exh. 3      Aff. of M. Hafner, Sept. 4, 2007, Exh. 1 (Aff. of B. Salmela, Sept. 12, 2005, Exh. A (Letter of M. Neudecker, Aug. 3, 2005)) [Doc. No. 9].

Exh. 4      Aff. of M. Hafner, Sept. 4, 2007, Exh. 1 (Aff. of B. Salmela, Sept. 12, 2005).

Exh. 5      Aff. of L. McMillen, Nov. 2, 2007 [Doc. No. 35].

Exh. 6      Report of A. Trutnau, Aug. 8, 2005 (Aff. of J. Egge, Nov. 26, 2007, Exh. 4) [Doc. No. 44].

Exh. 7      Tr. of Hr'g, Dec. 19, 2006 (Aff. of J. Egge, Nov. 26, 2007, Exh. 3).